**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| COUNTRYWOOD REALTY, LLC; HUNTSVILLE CONTRACTING, LLC; TRACEY GRIBBLE<br><br>Plaintiffs,<br><br>v.<br><br>TOWNSHIP OF HANOVER; HANOVER TOWNSHIP BOARD OF COMMISSIONERS; JOHN SIPPER; ALBERT J. BROODY; MARK BIENIAS; GARY MAKARCYK; and REILLY ASSOCIATES,<br><br>Defendants. | CIVIL ACTION NO. 3:15-cv-02056<br><br>(JUDGE CAPUTO) |

## **MEMORANDUM**

Presently before the Court are three Motions to Dismiss Plaintiffs' Amended Complaint (Doc. 8) filed by (1) Defendants Township of Hanover; Hanover Township Board of Commissioners; and John Sipper, Mark Bienias, and Gary Makarcyk in their individual and official capacities (Doc. 9), (2) Defendant Albert J. Broody in his individual and official capacity (Doc. 14), and (3) Defendant Reilly Associates (Doc. 18), respectively. Counts One, Two, and Three of Plaintiffs' Amended Complaint seek damages under 42 U.S.C. § 1983 from all Defendants for violations of Plaintiffs' due process rights. Count Four seeks damages under a state law claim for intentional interference with contractual relations against all Defendants. Count Five seeks damages under a state law claim of civil conspiracy against the Individual Defendants. Finally, Count Six seeks damages from all Defendants for maintaining a custom, policy, or practice that deprived Plaintiffs of their federal due process rights, and for Defendants' failure to train and supervise their employees.

Because Counts One and Six are barred by the statute of limitations, they will be dismissed against all Defendants with prejudice. Additionally, because Counts Two and Three fail to state a claim upon which relief can be granted, the Court will also dismiss Counts Two and Three against all Defendants with prejudice. Accordingly, because all of Plaintiffs' federal claims are dismissed, the Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) and will dismiss Plaintiffs' state law claims contained in Counts Four and Five without prejudice. Defendants' Motions to Dismiss Plaintiffs' Amended Complaint will therefore be GRANTED.

## I. Background

The facts as set forth in Plaintiff's Complaint are as follows:

Plaintiffs Countrywood Realty, LLC ("Countrywood") and Tracey Gribble identify themselves as the owners of property located in the Countrywood Subdivision Phase II, a residential development in Hanover Township, Luzerne County, Pennsylvania. (Pl.'s Am. Compl. ¶ 4, Doc. 8.) Countrywood is a limited liability company based in Luzerne County in the business of building residential developments. (*Id.* ¶ 1.) Tracey Gribble is the sole member of both Countrywood and Huntsville Contracting, LLC. (*Id.* ¶ 3.) Plaintiff Huntsville Contracting is also a limited liability company based in Luzerne County in the business of building residential developments. (*Id.* ¶ 2.)

Plaintiffs name seven Defendants in their Amended Complaint: Hanover Township, Hanover Township Board of Commissioners (collectively, the "Township Defendants"), John Sipper, Mark Bienias, Gary Makarcyk, and Albert Broody (collectively, the "Individual Defendants"), and Reilly Associates ("Reilly"). (*Id.* ¶ 5-9.) Hanover Township is a governmental entity that operates pursuant to the laws of the Commonwealth of Pennsylvania and has funding and oversight authority for the Township's Zoning Code Enforcement Office and its employees. (*Id.* ¶ 5.) Hanover Township Board of

2

Commissioners is an administrative body acting under the Township's authority and supervision. (*Id.* ¶ 6.) The Individual Defendants are all Zoning Officers, Code Enforcement Officers, and/or Clerks employed by the Township. (*Id.* ¶ 7.) Reilly is a civil engineering and land-planning firm which was partly responsible for "evaluating zoning requests and performing inspections on the behalf of Defendant Hanover Township." (*Id.* ¶ 8.)

Plaintiffs Countrywood Realty, LLC, Huntsville Contracting, LLC, and Tracey Gribble ("Plaintiffs") assert federal constitutional and related state law claims against Defendants arising out of a residential development project called Countrywood Phase II (the "development project" or "subdivision"). On or about January 20, 1997, the prior owners of the development project submitted an application to Defendants seeking to establish a fifty-one (51) building residential subdivision. (*Id.* ¶ 11.) On June 3, 1997, the development project was approved by the Hanover Township Planning Commission for final subdivision status. (*Id.* ¶ 13.). Subsequently, on or about June 25, 1997, the subdivision was recorded at the Luzerne County Recorder of Deeds Office. (*Id.* ¶ 14.) On or about June 5, 2001, the Hanover Township Planning Commission reapproved the development project to modify the legal use of two of the subdivision's lots (*id.* ¶ 15), and the subdivision was once again recorded at the county recorder office on or about July 9, 2001. (*Id.* ¶ 16.)

### *Dispute over Subdivision Approval*

On or about January 29, 2008, Plaintiff Countrywood Realty purchased the subdivision property. (*Id.* ¶ 17.) At the monthly Hanover Township Planning Commission meeting held on September 8, 2009, the Planning Commission informed Countrywood that it was required to reapply for subdivision approval despite the fact that the development project previously received final subdivision approval from the Township in 1997 and 2001. (*Id.* ¶ 21.) On or about September 10, 2009, Countrywood was granted a new Erosion and

3

Sedimentation permit from the Luzerne County Conservation District, and a new National Pollution Discharge Elimination System (NPDES) permit from the Pennsylvania Department of Environmental Protection (PA DEP). (*Id.* ¶ 18.)

On October 8, 2009, Defendant Albert Broody, a Township Code Enforcement Officer, shutdown Countrywood's tree clearing and surveying operations within the subdivision, citing a complaint from the county Conservation District. (*Id.* ¶ 23.) On the same day, Plaintiff Tracey Gribble spoke to Defendant Gary Makarcyk, the Township Zoning Office Clerk, who also informed Mr. Gribble that the Township shutdown the project due to a complaint from the Conservation District. (*Id.* ¶ 25.) However, when Mr. Gribble contacted the Conservation District that same day, he was informed that the Conservation District had not issued any complaints about Countrywood to the Township, and that Countrywood's tree clearing and surveying operations were permitted under its NPDES permit. (*Id.* ¶ 24.) After informing Mr. Makarcyk of the Conservation District's response, Mr. Makarcyk told Mr. Gribble that the Township was in fact shutting down the development project because "no land development application ha[d] been received." (*Id.* ¶¶ 26-27.) Plaintiffs claim that the land development application had "no relationship" to the clearing and surveying activities that were then being performed, that Defendants shutdown the project without a legal basis and in violation of state and/or local law, and that "Defendants' actions were part of [a] larger scheme to delay and stop Plaintiffs' development . . . and to damage Plaintiff[s] financially both at the times of the acts and into the future." (*Id.* ¶¶ 27-30.)

On or about October 30, 2009, Countrywood voluntarily submitted an application to the Township for subdivision approval. (*Id.* ¶¶ 31-32.) The Township Engineer at the time concluded that the 1997 and 2001 final subdivision approvals satisfied Countrywood's obligation to receive approval from the Township. (*Id.* ¶ 33.) However, on or about

4

December 9, 2009, the Township Planning Commission denied Countrywood's application for final subdivision approval. (*Id.* ¶ 34.).

### *Dispute over Performance Bond, Reimbursement Agreement, and the Township's Compliance with the SALDO*

In early April 2010, Defendant Reilly Associates was retained by the Township as the new Township Engineer. (*Id.* ¶ 36.) On or about April 27, 2010, Countrywood confirmed its intention to voluntarily provide a performance bond surety and forwarded an estimate to Reilly for review, even though the Township Subdivision Land Development Ordinance ("SALDO") only requires the Township to demand a performance bond after final subdivision approval is granted. (*Id.* ¶¶ 37-38.) On or about May 3, 2010, Countrywood asked Reilly to provide it with a reimbursement agreement, inspection rates, and a copy of the relevant Township ordinance outlining reimbursement terms and conditions, as required by the Pennsylvania Municipal Code. (*Id.* ¶ 39) In response, Reilly "ball parked" its inspection costs and did not provide Countrywood with any other documentation. (*Id.* ¶ 40.) On or about May 12, 2010, Reilly again refused to provide a reimbursement agreement for inspection fees to Countrywood. (*Id.* ¶ 41.) Plaintiffs allege that these actions were also part of a larger scheme to financially injure the Plaintiffs. (*Id.* ¶ 44.)

On or about May 12, 2010, Reilly required Countrywood to reapply for subdivision approval because a performance bond was not in place. (*Id.* ¶ 45.) Thereafter, on June 24, 2010, Reilly notified Plaintiffs that the development project had previously received approval from the Township, as Plaintiffs had contended. (*Id.* ¶ 47.) Reilly requested Countrywood provide it with a construction schedule, performance bond estimate, and reimbursement agreement. (*Id.* ¶ 48.) On or about July 14, 2010, Reilly approved Countrywood's performance bond estimate of $210,151.70. (*Id.* ¶ 50.) Countrywood then

submitted a performance bond for the approved amount, despite its position that it was under no legal obligation to do so. (*Id.* ¶ 51.) Similarly, on or about August 23, 2010, Countrywood submitted a draft reimbursement agreement for review to Reilly and the Township Planning Commission Solicitor, despite its position that it was under no legal obligation to do so. (*Id.* ¶ 53.) The reimbursement agreement was never executed by the Defendants. (*Id.* ¶ 55.)

### *Dispute over Damaged Sanitary Sewer Lines*

On or about March 2, 2011, and again on or about April 5, 2011, Countrywood informed Reilly of a fire hydrant agreement and execution procedure. (*Id.* ¶¶ 59-60.) On or about April 5, 2011, Countrywood received approval for one fire hydrant within the development project. (*Id.* ¶¶ 61-62.) In May 2011, Countrywood began the water line construction within the development under a construction agreement with Pennsylvania American Water Company (PAWC). (*Id.* ¶ 63.) Reilly was retained by PAWC to be the on-site engineer in charge of overseeing the installation of the public waterlines. (*Id.* ¶ 64.) A contractor performing the waterline construction damaged the sanitary sewer lines Plaintiffs previously installed, which serviced three houses in the development. (*Id.* ¶ 65.) Mr. Gribble demanded that the damaged lines be replaced because the Township required "pressured air-testing" before it would accept the sewer lines. (*Id.* ¶ 68.) PAWC subsequently demanded that the contractor, who was under Reilly's supervision when the damage occurred, replace or repair the damaged lines. (*Id.* ¶ 69.) Although Reilly approved some repairs, it only approved a repair technique that would not allow for "pressured air testing" of the damaged lines. (*Id.* ¶ 70.) Additionally, Reilly left other portions of the damaged sewer line unrepaired, and did not ensure that the repairs it did permit were adequate to hold the air pressure required for testing. (*Id.* ¶¶ 70-71.)

On or about July 17, 2012, Reilly emailed Countrywood asking about performing the sewer line testing. (*Id.* ¶ 73.) Countrywood responded by noting that "pressured air-testing" was not appropriate because the lines were broken and improperly repaired, and requested a meeting with Reilly to discuss an alternative sewer line testing procedure. (*Id.* ¶¶ 74-75.) On or about July 23, 2012, Reilly confirmed with Countrywide that an alternative testing method would be used if the lines were not properly repaired. (*Id.* ¶ 77.)  On August 27, 2014, Hanover Township and Reilly sent the alternative testing procedures to Countrywood, just over two years from when Reilly originally confirmed that an alternative test would be used.[1] (*Id.* ¶ 80.) Plaintiffs contend Defendants Hanover Township and Reilly engaged in a plot to game the inspection process and intentionally delay Plaintiffs' development project. (*Id.* ¶¶ 81, 83-84.)

### *Dispute over Request for a Performance Bond Reduction*

Plaintiffs further allege issues with the Township concerning their August 2, 2012 and February 13, 2013 requests for a bond reduction. (*Id.* ¶¶ 85, 89.) The August 2, 2012 request was only partially approved by the Township Board of Commissioners without an explanation, and was issued allegedly beyond the time limits prescribed in the Township's SALDO. (*Id.* ¶ 88.) The February 13, 2013 request was denied by the Township Board of Commissioners, but neither Reilly nor the Board provided Countrywood with the report and explanation that Plaintiffs contend is required under the SALDO. (*Id.* ¶¶ 90-95.) Countrywood thereafter filed suit against Hanover Township in the Luzerne County Court of Common Pleas, and a writ of summons was issued on April 11, 2013. (*Id.* ¶ 97.) In response, Countrywood held a meeting on May 1, 2013 with the Township Solicitor, a

---

[1] Plaintiffs' Amended Complaint states that the relevant date range was "July 23, *2013* to August 27, 2014." (Pl.'s Am. Compl. ¶ 80.) (emphasis added). The Court assumes that Plaintiffs intended to state as the range: July 23, *2012* to August 27, 2014.

7

representative of Reilly, Township Manager John Sipper, and Code Enforcement Officer Albert Broody. (*Id.* ¶ 96.) During the meeting, the Township told Countrywood that it would address the disputed bond reduction denials at the May 13, 2013 Commissioner's meeting if in return Plaintiffs dropped their lawsuit. (*Id.* ¶ 97.) However, the bond reduction request was not added to the May 13, 2013 meeting. (*Id.* ¶ 99.) Plaintiffs contend this was also part of an effort to delay and harm Plaintiffs' development project. (*Id.* ¶ 105.)

### *Dispute over the Balakier Home Construction Contract*

On April 26, 2013, Plaintiff Huntsville Contracting entered into a home construction contract with Michael and Maria Balakier for Property Lot 43 Countrywood Estates. (*Id.* ¶¶ 117, 131.) On July 10, 2013, Defendants pulled all building permits from Plaintiffs, and had their representatives inform the Balakiers that there would be delays in construction due to the withholding of permits. (*Id.* ¶¶ 127, 136.) The Balakiers subsequently sent a Notice of Termination to Plaintiffs on September 10, 2013, informing Plaintiffs that they were terminating the home construction contract. (*Id.* ¶ 131.) Despite receiving this Notice, Plaintiffs continued to construct the home until November 7, 2013. (*Id.* ¶¶ 132-134.) Plaintiffs again contend that Defendants executed a "planned scheme" to cause the Balakiers to back out of their contract with Plaintiffs in an effort to financially injure Plaintiffs. (*Id.* ¶ 137.)

### *Dispute over the Modification of the Stormwater Plans and the Developer's Agreement*

On or about September 10, 2013, the PA DEP approved construction of the modification of Countrywood's stormwater plans. (*Id.* ¶ 139.) However, the Township and Reilly required Countrywood to alter the stormwater plans, despite approval from the PA DEP (*id.* ¶ 141), and informed Countrywood that they would withhold performance bond

reduction money until it complied. (*Id.* ¶ 143.) Plaintiffs thereafter filed a complaint in mandamus in the Luzerne County Court of Common Pleas on February 19, 2014, requesting the court to direct the Township to release Countrywood's bond money as required under the SALDO (*Id.* ¶¶ 144-145.)

In response to Plaintiffs' complaint, a meeting was held on August 27, 2014 between Plaintiffs and Township officials during which Plaintiffs agreed to construct the final layer of asphalt on a newly constructed road in return for the Township reducing the performance bond in the certified amount. (*Id.* ¶¶ 147-149.) The parties entered into a Developer's Agreement on June 8, 2015, under which the Township released the performance bond reduction in the agreed upon amount. (*Id.* ¶ 153.) Additionally, the withheld funds stemming from the August 2, 2012 and the February 13, 2013 bond reduction denials were released on June 19, 2015, and April 22, 2015, respectively. (*Id.* ¶¶ 154-155.)

Plaintiffs contend that the various Defendants "acted under the color of law . . . to impede, delay, and take efforts to stop Plaintiffs development." (*Id.* ¶ 170.)

## II. Jurisdiction

This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the case raises federal questions under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983, as well as supplemental jurisdiction under 28 U.S.C. § 1367(a). Venue is appropriate in the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(1) because all defendants reside within this state and one or more defendants reside within this judicial district.

## III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed.

R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of her claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *Id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). As such, "[t]he touchstone of the pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

In deciding a motion to dismiss, the Court should consider the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Pension Benefit Guar. Corp.*, 998 F.2d at 1196. The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

### IV. Discussion

On October 22, 2015, Plaintiffs filed a six-count Complaint against Defendants (Doc. 1), and later filed an Amended Complaint on December 7, 2015. (Doc. 8.) Counts One, Two and Three assert due process violations. Counts Four and Five assert state

law claims for intentional interference with contractual relations and civil conspiracy, respectively. Count Six asserts a municipal liability claim. For the reasons detailed below, Counts One, Two, Three, and Six will be dismissed with prejudice. Counts Four and Five will be dismissed without prejudice.

A.	**Plaintiffs' Fifth Amendment Due Process Claims**

Plaintiffs assert a procedural due process claim in Count Two and a substantive due process claim in Count Three against the Township and Township officials. (Doc. 8.) Additionally, Plaintiffs assert a claim alleging the "denial of Fourteenth Amendment due process rights" in Count One, but fail to state whether they are asserting either a procedural and/or substantive due process claim in this Count. (*Id.*) In their Brief in Opposition to Defendants' Motion to Dismiss, Plaintiffs attempt to clarify that the procedural and substantive due process claims in Counts Two and Three are being brought under the Fifth Amendment of the United States Constitution, whereas the general due process claim in Count One is being brought under the Fourteenth Amendment. (Pl.'s Br. in Opp'n 3-4, Doc. 13.)

However, it is well-established that the Due Process Clause of the Fifth Amendment "restrict[s] only federal government action" and "does not directly apply to actions of state officials." *Nicolette v. Caruso*, 315 F. Supp. 2d 710, 718 (W.D. Pa. 2003) (citing *Nyguen v. U.S. Catholic Conference*, 719 F.2d 52, 54 (3d Cir. 1983)). Because none of the Defendants in this case is a federal official, Plaintiffs' Fifth Amendment due process claims contained in Counts Two and Three must be dismissed with prejudice for failing to state a claim upon which relief can be granted. The Court will, however, construe Count One of Plaintiffs' Amended Complaint to assert both procedural and substantive due process claims under the Fourteenth Amendment.

## B. Plaintiffs' Fourteenth Amendment Due Process Claims

Count One of Plaintiffs' Amended Complaint, when construed in a light most favorable to Plaintiffs, seeks damages against Defendants for a violation of Plaintiffs' Fourteenth Amendment procedural and substantive due process rights under 42 U.S.C. § 1983. (Doc. 8.) Section 1983 provides that every person who, under color of state law, subjects any citizen of the United States to the deprivation of any federal right shall be liable to the party injured. Because Congress did not provide for a statute of limitations for claims brought under § 1983, the Supreme Court has held that, "as a matter of federal law, all section 1983 claims are subject to the state statute of limitations for personal injury actions." *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 78 (3d Cir. 1989) (citing *Wilson v. Garcia*, 471 U.S. 261, 280 (1985)). Regardless of the nature of the alleged injury, a "uniform time limit for *all* § 1983 actions . . . must be applied in each state." *Gavalik v. Continental Can Co.*, 812 F.2d 834, 843 (3d Cir. 1987) (citing *Wilson*, 471 U.S. at 275) (emphasis in original).

Pennsylvania has a two-year statute of limitations period for personal injury actions. 42 PA. STAT. AND CONS. STAT. ANN. § 5524(7) (West 2014). Although state law dictates the applicable limitations period for a § 1983 claim, "[f]ederal law, on the other hand, governs the issue of what constitutes accrual." *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010). "Generally, a cause of action accrues and the statute of limitations begins to run 'when the plaintiff knew or should have known of the injury upon which its action is based.'" *Southersby Dev. Corp. v. Borough of Jefferson Hills*, 852 F. Supp. 2d 616, 623 (W.D. Pa. 2012) (quoting *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998)). "A claim accrues in a federal cause of action upon awareness of actual injury, not upon awareness that this injury constitutes a legal wrong." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1386 (3d Cir.

1994). Accordingly, "a Section 1983 claim accrues at the time when the injury is sustained" or "when the plaintiff has a complete and present cause of action," *Koehnke v. City of McKeesport*, 350 Fed. Appx. 720, 723 (3d Cir. 2009), even if "the full extent of the injury is not then known or predictable." *Wallace v. Kato*, 549 U.S. 384, 391 (2007). Therefore, in order for Plaintiffs' § 1983 claims alleging due process violations to not be barred by the statute of limitations, the claims must have been brought within two years from the date on which the alleged injury was sustained or Plaintiffs had a complete and present cause of action, even if the full extent of the injury was not then known.

### 1. The Statute of Limitations Has Expired

As recited in the Statement of Facts, Plaintiffs point to multiple actions and inactions on the part of various Defendants surrounding the subdivision development project that allegedly violated their due process rights. Specifically, Plaintiffs allege that: (1) Township Defendants wrongfully required Plaintiffs to reapply for subdivision approval at the Township Planning Commission meeting held on September 8, 2009 (Pl.'s Am. Compl. ¶ 21, Doc. 8); (2) Individual Defendants unlawfully shutdown Plaintiffs' tree clearing and surveying operations on October 8, 2009 (*Id.* ¶¶ 23-30); (3) Township Defendants wrongfully denied Plaintiffs' application for final subdivision approval on December 9, 2009 (*Id.* ¶ 34); (4) Reilly refused to comply with the SALDO in May 2010 (*Id.* ¶¶ 40-41); (5) Reilly failed to properly repair or replace the damaged sanitary lines in May 2011 (*Id.* ¶¶ 70-71); (6) Township Defendants and Reilly wrongfully denied part of Plaintiffs' August 2, 2012 bond reduction request, and wrongfully denied the entirety of Plaintiff's February 13, 2013 bond reduction request (*Id.* ¶¶ 87-88, 90-95); (7) the Balakiers sent Plaintiffs a Notice of Termination on September 10, 2013 and terminated the construction contract due to Defendants' actions (*Id.* ¶¶ 131, 135-138); and (8)

Defendants wrongfully required Plaintiffs to modify the approved stormwater plans on or about September 10, 2013. (*Id.* ¶¶ 139-141.)

Any claim brought under § 1983 that began accruing prior to October 21, 2013 is barred by the two-year statute of limitations. (*See* Pl.'s Compl., Doc. 1) (filing date of October 22, 2015). All of the discrete wrongful acts that Plaintiffs argue give rise to a plausible due process claim began accruing prior to October 21, 2013 because Plaintiffs sustained the alleged injuries, and had a present cause of action, prior to that date. Therefore, Plaintiffs' § 1983 claims asserting Fourteenth Amendment due process violations must be dismissed as barred by the statute of limitations. Plaintiffs do not dispute that the alleged injuries occurred outside of the limitations period, but rather argue that the statute of limitations should be tolled under the discovery rule. (Pl.'s Br. in Opp'n 5-10, Doc. 13.) For the reasons explained below, Plaintiffs cannot avail themselves of the discovery rule to delay the accrual of their § 1983 claims.

## 2. The Discovery Rule Does Not Apply

"The discovery rule tolls the accrual of the statute of limitations when a plaintiff is unable, '*despite the exercise of due diligence*, to know of the injury or its cause.'" *Mest v. Cabot Corp.*, 449 F.3d 502, 510 (3d Cir. 2006) (quoting *Pocono Int'l Raceway, Inc. v. Pocono Procduce, Inc.*, 468 A.2d 468, 471 (Pa. 1983)) (emphasis in original). Under the discovery rule, "even if a plaintiff suffers an injury, the statute of limitations does not begin to run until the plaintiff knows, or reasonably should know, (1) that he has been injured, and (2) that his injury has been caused by another party's conduct." *Id.* (internal citations omitted). "The burden is on the party claiming the benefit of the discovery rule to prove that she falls within it." *Debiec v. Cabot Corp.*, 352 F.3d 117, 129 (3d Cir. 2003).

The Court finds that Plaintiffs were both aware of the alleged injuries at or around the time the injuries occurred and also aware that the injuries were caused by the Defendants' conduct. Although Plaintiffs generally contend that Defendants' "continued assurances that any issues would be corrected delayed Plaintiffs recognition of injury and harm" (Pl.'s Br. in Opp'n 7, Doc. 13), Defendants' assurances of future performance do not negate Plaintiffs' then-present awareness of an injury. As the court correctly noted in the analogous case of *Southersby Development Corp. v. Borough of Jefferson Hills*, application of the discovery rule does not hinge upon when Plaintiffs became aware that Defendants' actions violated the Constitution, but rather upon when Plaintiffs became aware that it suffered an actual harm. *See* 852 F. Supp. 2d 616, 624 (W.D. Pa. 2012).

The allegations in the Amended Complaint make clear that Plaintiffs were aware, or with reasonable diligence should have been aware, of the actual harms stemming from the alleged injury-causing acts of the Defendants at the time the acts occurred. Specifically, Plaintiffs were aware that: Defendants were requiring them to reapply for subdivision approval after the Township Planning Commission meeting on September 8, 2009 (Pl.'s Am. Compl. ¶ 21, Doc. 8); Individual Defendants had shutdown their tree clearing and surveying operations on October 8, 2009 (*Id.* ¶¶ 23-30); Defendants denied their application for final subdivision approval on December 9, 2009 (*Id.* ¶ 34); Reilly refused to comply with the SALDO in May 2010 (*Id.* ¶¶ 40-41); Reilly failed to properly repair the damaged sanitary lines in May 2011 (*Id.* ¶¶ 70-71); their bond reduction requests were denied by the Defendants on or around August 2, 2012 and February 13, 2013 (*Id.* ¶¶ 87-88, 90-95); the Balakiers were terminating their contract on September 10, 2013 (*Id.* ¶ 131); and Defendants required modification of their stormwater plans on or about September 10, 2013. (*Id.* ¶¶ 139-141.) Regardless of whether Plaintiffs were

aware that these alleged injuries constituted a "legal wrong"– although Plaintiffs abandoned lawsuit against the Township in April 2013 suggests they suspected that they indeed had legally actionable injuries–nothing in Plaintiffs' Amended Complaint indicates they were unaware, or that it was unreasonable for them to become aware, of these discrete harms at or around the time they occurred.

Contrary to Plaintiffs contention, the alleged harms are not "latent." (*See* Pl.'s Br. in Opp'n 6, Doc. 13.) Latent injuries concern "instances in which the causal connection between an injury and another's conduct is not apparent." *Rowland v. Novartis Pharm. Corp.*, 34 F. Supp. 3d 556, 566 (W.D. Pa. 2014). The Amended Complaint demonstrates that Plaintiffs were aware that, in their view, injuries had occurred for which various named Defendants were responsible. Harms initially tolerated as "the cost of doing business with a political entity" are not latent merely because the injured party later believes the "red tape" is too burdensome. (Pl.'s Br. in Opp'n 5.) Plaintiffs cannot avail themselves of the discovery rule because they knew, or reasonably shown have known, that they had been injured by Defendants' conduct at or around the time the injury-causing events occurred.

Therefore, because Plaintiffs' § 1983 claims are barred by the statute of limitations, Count I will be dismissed with prejudice.

**C.      Plaintiffs' Municipal Liability Claim**

Count Six of Plaintiff's Amended Complaint, when construed in a light most favorable to Plaintiffs, asserts a § 1983 municipal liability claim against the Township for maintaining a policy, practice, or custom that denied Plaintiffs their due process rights,

and for failing to train and supervise their employees.[2] (Doc. 8.) Plaintiffs specifically allege that Defendants (presumably the Township Defendants) adopted a practice "which permitted the arbitrary and capricious actions of the individual Defendants, thereby depriving Plaintiffs due process," and "fail[ed] to properly train and supervise the employees . . . within the Township's Zoning and Inspection Office." (*Id.* ¶¶ 215-216.)

As detailed above, Plaintiffs' § 1983 claims are barred by the two-year statute of limitations. Unlike their due process claims, Plaintiffs do not contend in either their Amended Complaint or Briefs in Opposition that their municipal liability claim is not barred by the statute of limitations. Moreover, nothing in the Amended Complaint independently suggests Plaintiffs' municipal liability claims should not be subject to the limitations period. Accordingly, Count Six of Plaintiffs' Amended Complaint will be dismissed with prejudice.

D. **Plaintiffs' State Law Claims for Intentional Interference with Contractual Relations and Civil Conspiracy**

Because Defendants' motions to dismiss on Plaintiff's federal claims will be granted, this Court declines to exercise supplemental jurisdiction over Plaintiff's pendent state law claims. Pursuant to 28 U.S.C. § 1367(c)(3), this Court may decline to exercise supplemental jurisdiction if it has "dismissed all claims over which it has original jurisdiction." This Court has no original jurisdiction over Plaintiff's state law tort claims contained in Counts Four and Five. As such, Plaintiff's pendent state law claims will be

---

[2] Plaintiffs do not state in their Amended Complaint that this Count is brought under 42 U.S.C. § 1983, but clarify in their Brief in Opposition that the claim is indeed against the Township under § 1983. (Pl.'s Br. in. Opp'n Part E., Doc. 13.)

dismissed without prejudice. Plaintiffs are free to pursue their state law claims in state court.

### III. Conclusion

For the above stated reasons, Plaintiff's § 1983 claims contained in Counts One and Six will be DISMISSED with prejudice. Plaintiffs Fifth Amendment due process claims in Counts Two and Three will be DISMISSED with prejudice. The Court will decline to exercise supplemental jurisdiction over Plaintiffs' state law claims and will DISMISS Counts Four and Five without prejudice.

An appropriate order follows.


September 15, 2016                                                          /s/ A. Richard Caputo
Date                                                                                A. Richard Caputo
                                                                                       United States District Judge